1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10

11  COLUMBUS ALLEN, Jr.,                    Case No.:  3:16-cv-01923-CAB-JMA
    CDCR #AE-1543,
12                                          **ORDER DISMISSING FIRST**
                                 Plaintiff, **AMENDED COMPLAINT FOR**
13                                          **FAILING TO STATE A CLAIM**
                          vs.               **PURSUANT TO**
14                                          **28 U.S.C. § 1915(e)(2)(B)(ii)**
15                                          **AND § 1915A(b)(1)**
    SCOTT KERNAN, et al.,
16
                                Defendants.
17

18

19       COLUMBUS ALLEN, Jr. ("Plaintiff"), incarcerated at California State Prison in

20  Calipatria, California ("CAL") when he filed suit, but since transferred to California State

21  Prison- Solano, in Vacaville, California, is proceeding pro se in this civil action filed

22  pursuant to 42 U.S.C. § 1983.

23  **I.      Procedural History**

24       In his original Complaint, Plaintiff claimed more than a dozen CAL and California

25  Department of Corrections and Rehabilitation officials violated his First, Fourth, Eighth,

26  and Fourteenth Amendment rights by requiring he submit to random urinalysis,

27  subjecting him to discipline when he refused, and confiscating personal property from his

28  cell. (ECF No. 1 at 4-21.)

                                            1

On November 3, 2016, the Court granted Plaintiff leave to proceed in forma pauperis ("IFP"), but dismissed his Complaint sua sponte and in its entirety for failing to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b) (ECF No. 3.) In its 19-page Order, the Court thoroughly reviewed each and every potential constitutional basis for Plaintiff's claims, provided him notice of his pleading deficiencies, and granted him 45 days leave in which to amend them. (*Id.*)

In lieu of amendment, Plaintiff filed a Motion for Reconsideration of the Court's November 3, 2016 Order (ECF No. 5). On March 9, 2017, the Court denied Plaintiff's Motion for Reconsideration, but sua sponte granted him an extension of time in which to amend (ECF No. 6). Plaintiff again did not amend within the time granted, and instead submitted a Motion for extension of time in which to do so. (ECF No. 9). After the Court granted that request (ECF No. 9), Plaintiff filed the First Amended Complaint ("FAC") (ECF No. 10), which is now before the Court and subject to screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A.

## II.     Screening of Amended Complaint

As Plaintiff is aware due to the Court's November 3, 2016, and March 9, 2017 Orders, the Prison Litigation Reform Act ("PLRA") requires review of all complaints filed by persons proceeding IFP, as well as those filed by persons, like Plaintiff, who are "incarcerated or detained in any facility [and] accused of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary program," at the time of filing "as soon as practicable after docketing." *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under the PLRA, the Court must sua sponte dismiss complaints, or any portions thereof, which are frivolous, malicious, fail to state a claim, or which seek damages from defendants who are immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (§ 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

///

## A. Standard of Review

"The purpose of § 1915[] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *accord Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").

Every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

While a plaintiff's factual allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Indeed, while courts "have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*,

627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Even before *Iqbal*, "[v]ague and conclusory allegations of official participation in civil rights violations" were not "sufficient to withstand a motion to dismiss." *Id.*

### B.     Allegations in Amended Complaint

Plaintiff's FAC is based on the same factual scenario as his original Complaint: he claims more than a dozen CDCR and CAL correctional and inmate appeals officials violated his constitutional rights beginning on July 28, 2015, when he first refused to submit to random urinalysis testing. In Counts I and III of Plaintiff's FAC, he repeats his Fourth and Fourteenth Amendment challenges to Defendants' actions, including the initial decision requiring he submit to random urinalysis on July 28, 2015, as well the subsequent disciplinary conviction and punishment imposed based on his refusal to comply.[1] *See* ECF No. 10 at 5-19, 22-26. His FAC omits a previously alleged challenge to Defendants' actions on Eighth Amendment grounds, but in Count II, Plaintiff alleges new legal bases for relief grounded in First Amendment retaliation. *Id.* at 19-22.

///

///

---

[1] After he refused Defendant Rodriguez's order to provide a random urine sample on July 28, 2015, Plaintiff was charged with a "refusal to provide UA sample" in violation of CAL. CODE REGS., tit. 15 § 3290(d), via a CDC 115 Rules Violation Report ("RVR"), Log No. 07-15-C-111. *See* ECF No. 10 at 6, Pl.'s Attach. 2, Ex. B, Doc. No. 1, ECF No. 10 at 75. Plaintiff appeared before Lt. Valdez, the Senior Hearing Officer ("SHO") on August 9, 2015, was found guilty, *id.* at 76, and as a result, was assessed 30 days of credit forfeiture, loss of phone privileges, and was placed on "C" privilege group status. *Id.* at 77. Plaintiff was also denied visitation privileges for two concurrent 90-day periods, referred to "NA/AA programs," and ordered to "provide a minimum of one random drug test per month" effective August 9, 2015, through August 9, 2016. *Id.* at 77, 79-81. Plaintiff filed a CDCR 115 Inmate/Parolee Appeal, Log No. CAL-C-15-01379, challenging this RVR on September 8, 2015, *id.* at 83, which was granted in part and modified to include an additional 90 day loss-of-pay penalty not initially assessed, but required by CAL. CODE REGS., tit. 15 § 3315(f)(5)(J), at the Second Level of Review by Defendants Nava and Paul, *id.* at 9, 87-89, and then denied at the Third Level of Review on January 21, 2016, by Defendants Briggs, Montgomery, and Voong "on behalf of" CDCR Secretary Kernan. *Id.* at 10, 90-91.

1          1.      Count I – Fourth Amendment Claims

2          Specifically, in Count I, Plaintiff contends as he did in his original Complaint, that

3  Defendants Luccy and Ortega violated his Fourth Amendment rights by seizing a CD

4  player, a fan, and trimmers from his cell on October 9, 2015, "without [a] warrant," or

5  "reasonable cause," *see* ECF No. 10 at 17-18, and that Defendant Montgomery, on

6  eighteen occasions *after* he was found guilty of having refused to provide a urine sample

7  on July 28, 2015, "authorized the search and seizure of [his] person," and violated his

8  right to "privacy in his person" by requiring he submit to urinalysis testing "without

9  warrant, reasonable cause," or a "legitimate penological interest." *Id.* at 18.

10         As the Court noted in its November 3, 2016 Order, Plaintiff's Fourth Amendment

11  challenge to his compelled urinalysis is foreclosed by the Ninth Circuit's decision in

12  *Thompson v. Souza*, 111 F.3d 694 (9th Cir. 1997). In *Thompson*, the Ninth Circuit

13  expressly rejected a California prisoner's challenge to a strip search and a compelled

14  "urinalysis drug test" on Fourth Amendment grounds. *See id.* at 696, 701-02. In fact,

15  *Thompson* holds that even the *non-random* compelled urinalysis of a convicted prisoner

16  survives a Fourth Amendment challenge so long as the testing is conducted in a

17  "reasonable manner," not "intended to harass," and is rationally related to the legitimate

18  penological interest of "curb[ing] the use and flow of drugs among persons in a volatile

19  environment peculiarly susceptible to drugs." *Id.* at 701-03 (internal citations and

20  quotations omitted).

21         In his FAC, Plaintiff claims Defendant Montgomery violated his Fourth

22  Amendment right to "privacy in his person" each time he "demanded U/As without

23  warrant" and refused to "disclose" the "reasonable cause" requiring his submission. *See*

24  ECF No. 10 at 18-19. But nothing in his FAC plausibly suggests Plaintiff's initial random

25  selection on July 28, 2015, or the monthly urinalysis testing he was subjected to as a

26  result of his August 9, 2015 disciplinary conviction for failing to comply with Defendant

27  Rodriguez's July 28, 2015 order, was intended to harass him, conducted in an

28  unreasonable manner on any occasion, or was somehow unrelated to the CDCR's

5

legitimate interest in preventing drug use and/or possession within its facility. *See*

*Thompson*, 111 F.3d at 701-03; *see also Riley v. Kernan*, No. 3:16-CV-00405-MMA-

JMA, 2017 WL 3437576, at *5 (S.D. Cal. Aug. 10, 2017) (dismissing prisoner's Fourth

Amendment urinalysis claims for failing to state a claim because "random mandatory

drug testing, and non-random testing that is not intended to harass an inmate, are

reasonable under the Fourth Amendment," citing *Thompson*, 111 F.3d at 702).

The Court further dismissed Plaintiff's Fourth Amendment claims against

Defendants Ortega and Luccy "because he enjoys no reasonable expectation of privacy in

his cell." *See* ECF No. 3 at 15 (citing *Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984)

("[T]he Fourth Amendment proscription against unreasonable searches does not apply

within the confines of the prison cell."). None of the search and seizure allegations in

Plaintiff's FAC differ from those alleged in his original pleading. Therefore, to the extent

Plaintiff's FAC continues to challenge Ortega and Luccy's warrantless seizure of his

personal property without "reasonable cause," *see* ECF No. 10 at 17-18, it still fails to

state a Fourth Amendment claim, and is still subject to sua sponte dismissal on that basis

pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See Lopez*, 203 F.3d at

1126-27; *Rhodes*, 621 F.3d at 1004.

2.      Count III – Fourteenth Amendment Claims

In "Count III," Plaintiff claims, also as he previously did in his original Complaint,

that with respect to his random July 28, 2015 urinalysis, Defendants Rodriguez, Silvas,

Blackstone, Sanchez, Valdez, Uribe, Chavarria, Whitman, Nava, Paul, Briggs, and

Voong all "breached" and/or "exceeded" their duties to "afford [him] the protection and

benefit of disciplinary and grievance procedures" that comported with the Fourteenth

Amendment.[2] *Id.* at 22-24.

---

[2] Plaintiff also cites the due process clause of the Fifth Amendment with respect to his due process and deprivation of property claims. *See* ECF No. 10 at 22. However, "[t]he Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States." *Castillo v. McFadden*, 370 F.3d 882,

Plaintiff further contends Defendant Montgomery similarly breached his duties on multiple occasions *after* Plaintiff's August 9, 2015 RVR CDC 115 Log No. 07-15-C-111 disciplinary conviction by "directing" his subordinates to "authorize[e] U/As" without affording him the "protection and benefit" of proper "procedures," and refusing to "disclose" the probable cause supporting Plaintiff's urinalysis testing, as he demanded, on September 15, 2015, September 24, 2015, October 5, 2015, October 15, 2015, November 19, 2015, December 8, 2015, January 25, 2016, February 5, 2016, March 14, 2016, March 31, 2016, April 27, 2016, May 4, 2016, June 6, 2016, July 29, 2016, August 8, 2016, December 27, 2016, March 1, 2017, and May 8, 2017. *Id.* at 12-17, 25-26.

Finally, in "Count III," Plaintiff makes the same Fourteenth Amendment allegations he did in his original Complaint with respect to the October 9, 2015 seizure of his property by Defendants Luccy and Ortega. *Id.* at 10, 25. But he no longer appears to challenge the actual deprivation of his CD player, fan or hair trimmers directly.[3] Instead, Plaintiff claims that Ortega and Luccy, together with Defendants Hernandez, Chavarria, Hedrick, Briggs, Voong, and Montgomery, who "approved" the denial of his inmate

---

889 n. 5 (9th Cir. 2004). Because Plaintiff is not challenging the actions of the federal government, the Fifth Amendment does not apply. *See, e.g., Radford v. City of Portland*, No. Civ. 04-1754-MO, 2005 WL 189715, at *2 (D. Or. Jan. 20, 2005) (dismissing pro se plaintiff's Fifth Amendment due process claims against state actors for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)).

[3] Nor could he, for as the Court noted in its November 3, 2016 Order, allegedly unauthorized negligent or intentional deprivations of property fails to state a Fourteenth Amendment claim so long as the state provides an adequate post-deprivation remedy. *See* ECF No. 3 at 16 (citing *Zinermon v. Burch*, 494 U.S. 113, 129-32 (1990); *Hudson*, 468 U.S. at 533 (1984); *Sorrels v. McKee*, 290 F.3d 965, 972 (9th Cir. 2002)). Because the California Tort Claims Act provides an adequate post-deprivation state remedy, and Plaintiff continues to allege his property was wrongfully confiscated as a result of Ortega and Luccy's negligent or intentional acts, *see* ECF No. 10 at 10), he still fails to state a due process claim upon which § 1983 relief can be granted. *See Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994). Indeed, Plaintiff admits to have filed two tort claims regarding the deprivation of his personal property, Claim G628507, which was rejected by California's Victim Compensation and Government Claims Board on January 29, 2016, three months before the Third Level Appeal CDCR 602 Log No. CAL-C-15-01679 was denied on March 21, 2016, and Claim G6300401, which was also rejected on May 27, 2016. *See* ECF No. 10 at 11-12, Attach. 2, Ex. C, Doc. No. 4 at 92-93; Attach. 3, Doc. No. 8 at 110-111.

grievance related to that seizure on CDCR Secretary Kernan's behalf,[4] also "breached" and/or "exceeded" their duties to "afford [him] the protection and benefit of property seizure, verification, disposition and grievance procedures" in violation of due process.[5] *Id.* at 25-26.

In sum, Plaintiff re-asserts the same basic due process allegations as he did in his original Complaint insofar as he challenges the validity of his July 28, 2015 random urinalysis, as well and the procedures attendant to the disciplinary conviction and punishment that followed, as violations of his "liberty interests." *See* ECF No. 10 at 5-17. This time, however, Plaintiff's due process claims also focus on Defendants' alleged

---

[4]  Plaintiff filed a CDCR 602 Inmate/Parolee Appeal Log No. CAL-C-15-01679 on October 27, 2015, challenging Luccy and Ortega's October 9, 2015 "illicit confiscation of [his] personal property." *See* ECF No. 10 at 10-12, Attach. 3, Doc. Nos. 1-7, ECF No. 10 at 95-109. Plaintiff was interviewed by Defendant Hernandez, and the appeal was denied by Associate Warden Chavarria at the first level of review on December 9, 2015, based on findings that Plaintiff's property was "confiscated due to [its] being altered from its original state," "and / or [did] not belong to [him]," was properly "documented on the cell search receipt," and "was taken to R&R." *Id.* at 104-05. Plaintiff's appeal to the second level of review was accepted by Chavarria on December 16, 2015, *id.* at 101, but denied for the same reasons by Chief Deputy Warden Hedrick on December 24, 2015. *Id.* at 106-107. Plaintiff appealed to the third level on January 4, 2015, *id.* at 101, but his appeal was again denied by Appeals Examiner R. Briggs "for" M. Voong, the Chief of the Office of Appeals on March 21, 2016. *Id.* at 108-09. None of the exhibits Plaintiff filed in support of this claim or appeal, however, make mention of or involve CDCR Secretary Kernan whatsoever.

[5]  Plaintiff also claims the denial of "equal protection," with respect to Count III, *see* ECF No. 10 at 22, 26, but nowhere in his FAC does he provide any "factual content" to plausibly support an equal protection violation. *See Iqbal*, 556 U.S. at 678, 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The Equal Protection Clause directs that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see also Bell v. Wolfish*, 441 U.S. 520, 545-47 (1979) (holding that convicted prisoners are entitled to protection under Equal Protection Clause). To state an equal protection claim, a prisoner must allege he was intentionally discriminated against based on his membership in a protected class, *see Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001) (discussing elements of equal protection claim in § 1983 civil rights action), or intentionally treated differently from other similarly situated inmates without a rational basis for such disparate treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (involving plaintiff who "did not allege membership in a class or group"); *see also N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (holding that an equal protection claim brought by "class of one" is "premised on unique treatment rather than on a classification"); *see also Dennison v. Corr*, No. 16-00389 JMS/KJM, 2016 WL 4419283, at *4 (D. Haw. Aug. 16, 2016).

failures to properly address either his urinalysis claims in the context of CDCR 602 Inmate/Parolee Appeal, Log No. CAL-C-15-1379, or his property claims in the context of CDCR 602 Inmate/Parolee Appeal, Log No. CAL-C-15-1679. *See* ECF No. 10 at 23-26.

As Plaintiff is aware, the Due Process Clause of the Fourteenth Amendment protects prisoners against a deprivation or restraint of a "protected liberty interest" and "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (internal quotation marks omitted). Only if an inmate has alleged facts sufficient to show a protected liberty interest does the court next consider "whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez*, 334 F.3d at 860.

First, Plaintiff continues to allege that the July 28, 2015 order requiring him to submit to random urinalysis without "probable cause," the discipline imposed as a result of his failure to comply—including the loss of custody credit, yard privileges, pay, visitation, the requirement that he submit to a "minimum of one random drug test per month" for one year afterward, *see* ECF No. 10 at 7, 75-81—as well as the seizure of his property on October 9, 2015, *id.* at 10, 25-26, "restrain[ed]" and "interfered with [his] liberty," *id.* at 26, and therefore, amounted to an "atypical" and "significant hardship" under *Sandin*.

However, as the Court noted in its November 3, 2016 Order, the loss of privileges like yard time, phone access, and visitation are "within the range of confinement to be normally expected for one serving [the underlying sentence]"), and therefore are not "atypical." *Sandin*, 515 U.S. at 487; *see also Davis v. Small*, 595 Fed. Appx. 689, 691-92 (9th Cir. 2014); *Higdon v. Ryan*, No. CV 13-0475-PHX-DGC, 2014 WL 1827156, at *5 (D. Ariz. May 8, 2014) (noting that the "loss of contact visitation cannot form the basis for an independent due process violation," and dismissing claims that the denial of contact visitation was a "significant and atypical hardship" under *Sandin*). Nor has Plaintiff alleged facts sufficient to plausibly suggest that the October 9, 2015 confiscation

3:16-cv-01923-CAB-JMA

of his fan, trimmers, and CD player "imposed an atypical or significant hardship in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 487; *Iqbal*, 556 U.S. at 678; *see also Steffey v. Orman*, 461 F.3d 1218 (10th Cir. 2006) (restriction on inmates' ability to receive money from outside sources was not an "atypical or significant hardship" under *Sandin*); *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) (dismissing due process challenge to policy limiting amount of property state prisoners could keep in their cells); *Martin v. Hurtado*, Civil No. 3:07-cv-0598 BTM RBB, 2008 WL 4145683, *13 (S.D. Cal. Sept. 3, 2008) ("Plaintiff's Complaint fails to state a procedural due process claim because the deprivation of his television does not pose an atypical and significant hardship when compared to the ordinary incidents of prison life."); *Owens v. Ayers*, No. C 01-3720 SI, 2002 WL 73226, *2 (N.D. Cal. Jan.15, 2002) (dismissing prisoner's property claim under both *Sandin* and pre-*Sandin* analysis).

Moreover, even if Plaintiff *had* alleged facts sufficient to invoke a protected liberty or property interest under *Sandin*, he still fails to plead facts to plausibly show he was denied the procedural protections the Due Process Clause requires—with respect to either his urinalysis or his property deprivation claims. *See Iqbal*, 556 U.S. at 678; *Ramirez,* 334 F.3d at 860 (citations omitted); *see also Brown v. Oregon Dep't of Corr.*, 751 F.3d 983, 987 (9th Cir. 2014).

With respect to his disciplinary conviction, those procedures include: (1) written notice of the charges at least 24 hours before the disciplinary hearing; (2) a written statement by the fact-finder of the evidence relied on and reasons for the disciplinary action; (3) the right to call witnesses and present documentary evidence if doing so will not jeopardize institutional safety or correctional goals; (4) the right to appear before an impartial body; and (5) assistance from fellow inmates or prison staff in complex cases. *Wolff v. McDonnell*, 418 U.S. 539, 563-72 (1974); *Serrano v. Francis*, 345 F.3d 1071, 1079-80 (9th Cir. 2003).

As for his urinalysis claims, Plaintiff continues to admit, and his exhibits continue to show, that he was provided notice before his RVR hearing, given a written statement

of the charges, presented with documentary evidence supporting the charge of "refusal to provide UA sample" pursuant to CAL. CODE REGS., tit. 15 § 3290(d), and provided an opportunity to defend. *See* ECF No. 10 at 6, & Attach. 2, Ex. B at 75-78. In fact, Plaintiff called Correctional Officer V. Rodriguez as a witness, questioned him as to the specifics of his refusal during his August 9, 2015 RVR hearing, *id.* at 76, and fully challenged both the validity and the procedures attendant to that disciplinary hearing via CDCR 602 Inmate/Parolee Appeal, Log No. CAL-C-15-1379. *See id.* Attach. 2, Ex. C at 83-91. And insofar as Plaintiff claims the "record of the RVR disposition reflects no evidence supporting the conclusion that [he] refused" to submit to random urinalysis testing pursuant to CAL. CODE REGS., tit. 15 § 3290(d), *see* ECF No. 10 at 8, his exhibits plainly contradict that claim. *See* ECF No. 10 at 76-77, CDC 115 RVR CAL-07-15-C-111 (finding Plaintiff guilty based on "a preponderance of evidence," including Defendant Rodriguez's written report, as well as Plaintiff's admission, that he was guilty of violating CAL. CODE REGS., tit. 15 § 3290(d) (refusal to provide UA sample)).

*Wolff* does not require either judicial review or a "specified quantum of evidence" to support the fact-finder's decision. *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 454 (1985). Rather, a prison disciplinary board's findings are upheld where they "are supported by some evidence in the record." *Id.* at 454-55. The "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder. *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994) (citing *Hill*, 472 U.S. at 455-56).

Here, the exhibits attached to Plaintiff's Complaint are sufficient to show his disciplinary conviction was supported by not just "some evidence," *Hill*, 472 U.S. at 454-55, but by a "preponderance of evidence." ECF No. 10, Attach. 2, Ex. B at 76. At bottom, Plaintiff continues to challenges the validity of CAL. CODE REGS., tit. 15 § 3290's requirement that he provide a urine sample in the absence of any particularized suspicion of his drug use; however, as the Court noted in its November 3, 2016 Order, Plaintiff was disciplined for failing to comply with a direct order—not drug use, and the "some

evidence" standard supporting a prison disciplinary violation "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *See* ECF No. 3 (quoting *Hill*, 472 U.S. at 455). The Constitution does not even "require evidence that logically precludes any conclusion but the one reached by the disciplinary board," *Hill*, 472 U.S. at 457, and even where the evidence "might be characterized as meager," if "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary," those findings must be upheld. *Id; see also Martinez v. Busby*, No. EDCV 11-604 VAP FFM, 2013 WL 1818268, at *7 (C.D. Cal. Mar. 7, 2013) (report and recommendation to dismiss prisoner's due process / sufficiency of the evidence challenge to prison disciplinary conviction for use of a controlled substance in violation of CAL. CODE REGS. tit. 15, § 3016(a)), *adopted*, No. EDCV 11-604 VAP FFM, 2013 WL 1800439 (C.D. Cal. Apr. 29, 2013).

Finally, and insofar as Plaintiff bases his Due Process challenge on Defendants' alleged failures to properly process his CDCR 602 Inmate Appeal Log No. CAL-C-15-1379 (RVR re urinalysis), or CDCR Inmate Appeal Log No. CAL-C-15-1679 (personal property), his FAC also fails to state a Fourteenth Amendment claim. The Ninth Circuit has held that inmates have no protected *property* interest in an inmate grievance procedure arising directly from the Due Process Clause. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure.") (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (finding that the due process clause of the Fourteenth Amendment creates "no legitimate claim of entitlement to a [prison] grievance procedure")). Even the non-existence of, or the failure of prison officials to properly implement, an administrative appeals process within the prison system does not raise constitutional concerns. *Mann*, 855 F.2d at 640; *Riley v. Roach*, 572 F. App'x 504, 507 (9th Cir. 2014) (affirming district court's dismissal of prisoner's claims against Appeals Coordinators for failure to state a claim because "inmates do not possess a constitutional right to a prison grievance

system."); *see also Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). Nor does Plaintiff have a constitutional right to have his grievances decided or processed in a particular manner. *See, e.g., Seely v. Gibbons*, 548 Fed. App'x 502 (9th Cir. 2013) (concluding that district court properly allegations that defendants violated plaintiff's rights because they denied or improperly handled his inmate grievances on grounds that he had "no right to have his grievances processed or decided in a particular manner") (citing *Ramirez,* 334 F.3d at 860); *accord Turner v. HDSP Law Library*, No. 2:13-CV-01623-JCM, 2014 WL 2745300, at *1 (D. Nev. June 17, 2014).

In addition, Plaintiff's FAC fails to plead facts sufficient to show any Defendant deprived him of a protected *liberty* interest by allegedly failing to respond to his urinalysis or property deprivation grievances in a way that satisfied him. While a liberty interest can arise from state law or prison regulations, *Meachum v. Fano*, 427 U.S. 215, 223–27 (1976), as discussed above, due process protections are implicated only if Plaintiff alleges facts to show that Defendants: (1) restrained his freedom in a manner not expected from his sentence, and (2) "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Plaintiff's FAC pleads no facts to suggest how Defendants' allegedly inadequate review of either CDCR 602 Inmate Appeal Log No. CAL-C-15-1379, or CDCR Inmate Appeal Log No. CAL-C-15-1679, restrained his freedom in any way, or subjected him to any "atypical" and "significant hardship." *Id.* at 483-84; *accord McIntosh v. San Diego County Sheriff's Dep't*, No. 3:17-CV-00946-JLS-PCL, 2017 WL 4310764, at *4-5 (S.D. Cal. Sept. 28, 2017).

Accordingly, the Court finds Plaintiff's FAC still fails to state a procedural due process claim as to any Defendant; therefore, his Fourteenth Amendment claims must again be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

///

///

3:16-cv-01923-CAB-JMA

### 3.	Count II – First Amendment Retaliation Claims

In "Count II," Plaintiff newly re-casts his claims in terms of "retaliation." Specifically, he contends Defendant Rodriguez "drafted an illicit RVR" (Rules Violation Report) regarding his refusal to submit to urinalysis testing on July 28, 2015, "*in retaliation* to [his] right to prevent restraint of liberty," and as "interference with the exercise and protection of his rights and liberties." *Id.* at 6, 20 (emphasis added). Plaintiff further contends Luccy and Ortega's October 9, 2015 cell search and property seizure was conducted "*in retaliation*" for his October 8, 2015 "quest for [a] proper response to his requests" regarding the "probable cause" for his urinalysis. *Id.* at 12-13, 19-20 (emphasis added). In addition, Plaintiff contends Defendants Nava, Chavarria, and Paul "imposed additional sanctions upon [him]" when they reviewed his CDCR 602 Inmate/Parolee Appeal Log No. CAL-C-15-01379 at the second level on October 14, 2015, "*in retaliation*" for his having filed it on September 8, 2015. *Id.* at 20 (emphasis added); *see also* Pl.'s Attach. 2, Ex. C, ECF No. 10 at 83-91.

Plaintiff makes similar allegations in Count II as to Defendant Chavarria in relation to CDCR 602 Inmate/Parolee Appeal, Log No. CAL-C-15-1679, filed on October 27, 2015, and challenging the "illicit confiscation of [his] personal property" by Ortega and Luccy. Plaintiff contends Chavarria "exceeded his authority" by "conducting a 2nd level review" of this appeal on December 16, 2015, "*in retaliation*" for Plaintiff's decision to appeal its denial at the first level. *Id.* at 20 (emphasis added); *see also* Pl.'s Attach. 3, Doc. Nos. 4-7, ECF No. 10 at 100-109.

Finally, as he also does in Count III with respect to Defendant Montgomery's alleged due process violations, Plaintiff alleges that he "believes" Montgomery "directed and/or authorized the *retaliatory* acts of his subordinates," including the random drug testing he was required to undergo following his August 9, 2015 disciplinary conviction, ECF No. 10 at 12-17, in order to deter Plaintiff's "efforts to redress" the "unconstitutional practices" authorizing his urinalysis and property confiscation claims via CDCR 602 inmate grievance procedures. *Id.* at 12, 21 (emphasis added).

Thus, each of Plaintiff's Count II claims are restatements of his previously alleged claims, but freshly alleged to have been premised on an overarching theory of First Amendment retaliation.

It is true that under the First Amendment, prison officials may not retaliate against prisoners for initiating litigation or filing administrative grievances. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005). However, a viable claim of retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) the inmate's protected conduct and that the adverse action (4) chilled the inmate's exercise of his First Amendment rights and (5) did not reasonably advance a legitimate penological purpose. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (quoting *Rhodes*, 408 F.3d at 567-68). Plaintiff's Count II claims fail to satisfy these pleading requirements.

As a preliminary matter, Plaintiff peppers his pleading with claims of "retaliation," but legal "labels and conclusions" like this "are not entitled to the assumption of truth" and fail to state a plausible claim for relief unless they are supported by "further factual enhancement" that "allows the court to draw the reasonable inference that [each] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678-79.

With respect to his allegations against Defendant Montgomery especially, which are based on Plaintiff's mere "belief" that he "directed and/or authorized the retaliatory acts of his subordinates," ECF No. 10 at 12-17, Plaintiff clearly fails to state any plausible claim for relief. *Iqbal,* 556 U.S. at 676 ("Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient."); *see also Cejas v. Paramo*, No. 3:14-CV-1923-WQH-WVG, 2017 WL 3822013, at *2 (S.D. Cal. Sept. 1, 2017).

///

3:16-cv-01923-CAB-JMA

1       Plaintiff's retaliation claims as to the remaining Defendants are more

2 individualized, but they also fall short. For example, Plaintiff claims Defendant

3 Rodriguez charged him with failing to provide a urine sample on July 28, 2015, "in

4 retaliation to [his] right to prevent [a] restraint of liberty." ECF No. 10 at 6, 20. But

5 Plaintiff does not further allege facts to show Rodriguez issued the July 28, 2015 RVR

6 "because" Plaintiff had previously engaged in any "protected conduct." *See Brodheim*,

7 584 F.3d at 1269.

8       Plaintiff's allegations of "retaliation" on the part of Luccy and Ortega fail to state a

9 claim for a similar reason. While he contends they seized his property on October 9, 2015

10 "in retaliation" for his demands, via several CDCR 22 Inmate/Parolee Requests,[6] that

11 Defendants Chavarria, Whitman and Pollard "disclos[e] [the] probable cause" for his

12 September 10, 2015, September 22, 2015, or October 2, 2015 urinalysis testing orders,

13 *see* ECF No. 12-13, 114-118, he alleges no further facts to establish a nexus between

14 Luccy and Ortega's alleged retaliatory seizure and any "protected activity" related to his

15 urinalysis testing or *any* formal or informal grievance he filed, or even threatened to file.

16 *See Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1314 (9th Cir. 1989) (plaintiff

17 must allege the protected conduct was a "substantial" or "motivating" factor in the

18 defendant's decision to act); *see also Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th

19 Cir. 2000) ("To conclude that Greene was aware of Huskey's statements to Gallo and that

20 Greene retaliated against Huskey because of them would be to engage in the logical

21 fallacy of post hoc, ergo propter hoc, literally, "after this, therefore because of this.")

22 (citation omitted).

23 ///

---

[6] It matters not that this claim appears to focus on Plaintiff's CDCR 22 Inmate/Parolee Requests for Interview, Item or Service, as opposed to his *formal* CDCR 602 Inmate Appeals. *See Entler v. Gregoire*, __ F.3d __, 2017 WL 2017 WL 4448218 at *__ (9th Cir. Oct. 6, 2017) (No. 14-35053), slip op. at 17 ("[T]he form of the complaints—even if verbal, let alone, as here, written—is of no constitutional significance," for even "threats to sue fall within the purview of the constitutionally protected right to file grievances.").

3:16-cv-01923-CAB-JMA

And as for Plaintiff's additional allegations that Defendants Nava, Chavarria, and Paul "retaliated" against him for filing CDCR 602 Inmate Appeal Log Nos. CAL-C-15-01379 (his urinalysis grievance), and CDCR 602 Inmate Appeal Log No. CAL-C-15-01679 (his property grievance), simply by reviewing, modifying and/or denying them at the second level of administrative review, *see* ECF No. 10 at 20, 83-91, 100-109, he also fails to state a claim. *See Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (plaintiff bears the burden of pleading the "absence of legitimate correctional goals" for the conduct about which he complains); *see also Burgos v. Canino*, 641 F. Supp. 2d 443, 455 (E.D. Pa. 2009) ("The mere denial of grievances does not rise to the level of adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights."); *Dicey v. Hanks*, No. 2:14-cv-2018 JAM AC P, 2015 WL 4879627, at *5 (E.D. Cal. Aug. 14, 2015) (collecting cases) ("[D]enial of a grievance neither constitutes an adverse action that is more than de minimis nor is it sufficient to deter a prisoner of "ordinary firmness" from further First Amendment activities."); *accord Wong v. Ponce*, No. 2:16-CV-00501 AC P, 2017 WL 784913, at *6 (E.D. Cal. Mar. 1, 2017); *Morris v. Green*, No. 2:13-CV-0589 JAM CKD P, 2016 WL 4044930, at *4 (E.D. Cal. July 28, 2016); *Payan v. Tate*, No. 1:13-CV-00807 LJO BAM PC, 2017 WL 880422, at *3 (E.D. Cal. Mar. 6, 2017) ("Plaintiff cannot state a claim for retaliation because defendants partially granted and/or denied his prison grievances."), *report and recommendation adopted*, No. 1:13-CV-00807 LJO BAM PC, 2017 WL 1214015 (E.D. Cal. Mar. 31, 2017).

### 4.   State Law Claims

Finally, as he did in his original Complaint, Plaintiff re-alleges violations of Art. 1 of the California Constitution, as well as CAL. CIVIL CODE § 52.1, and various provisions of the California Penal Code, Code of Civil Procedure, Code of Regulations, and the CDCR Operations Manual. *See* ECF No. 10 at 3-5, 17-26.

As this Court noted in its November 3, 2016 Order, however, there is no independent cause of action under § 1983 for a violation of Title 15 of the California

3:16-cv-01923-CAB-JMA

Code of Regulations. *See* ECF No. 3 at 16 (citing *Chappell v. Newbarth*, 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under Title 15 of the California Code of Regulations); *Parra v. Hernandez*, 2009 WL 3818376, at *2, 8 (S.D. Cal. Nov. 13, 2009) (same)). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress." *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997); *see also Davis v. Kissinger*, 2009 WL 256574, *12 n.4 (E.D. Cal. Feb. 3, 2009) ("[T]here is not a single reported state or federal case permitting an independent cause of action" pursuant the California Code of Regulations.). Similarly, there is no liability under § 1983 for violating prison policies, such as those outlined in the CDCR's Operations Manual. *See Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009).

Moreover, 28 U.S.C. § 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.* However, "once judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997). "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if— (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

For all the reasons discussed above, the Court has found Plaintiff's Amended Complaint fails to state a plausible claim for relief pursuant to 42 U.S.C. § 1983 on First, Fourth, and Fourteenth Amendment grounds. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), § 1915A(b). Therefore, in the absence of any viable federal claim upon which § 1983

relief may be granted, the Court again exercises its discretion and dismisses all supplemental state law claims alleged in Plaintiff's FAC without prejudice pursuant to 28 U.S.C. § 1367(c)(3). *Id.*

### C. Leave to Amend

Because Plaintiff has already been provided a short and plain statement of his Fourth, Eighth, and Fourteenth Amendment pleading deficiencies, as well as an opportunity to amend those claims to no avail, the Court finds further leave to amend them would be futile. *See Gonzalez v. Planned Parenthood*, 759, F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of ... leave to amend.'") (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad." (internal quotation marks omitted) (second alteration in original)).

However, because Plaintiff has not been previously apprised of his pleading deficiencies with respect to the First Amendment retaliation claims raised for the first time in his FAC against Defendants Montgomery, Rodriguez, Luccy, Ortega, Nava, Chavarria, and Paul, the Court will grant him leave to amend those, *and only those* claims. *See Franklin v. Murphy*, 745 F.2d 1221, 1228 n.9 (9th Cir. 1984) ("Pro se plaintiffs proceeding [IFP] must … be given an opportunity to amend their complaint [prior to dismissal] unless it is absolutely clear that the [pleading] deficiencies … could not be cured by amendment.").

## III. Conclusion and Order

For all the reasons discussed, the Court **DISMISSES** Plaintiff's Amended Complaint (ECF No. 10) sua sponte in its entirety for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and **GRANTS** him forty-five (45) days leave from the date of this Order in which to file a

3:16-cv-01923-CAB-JMA

Second Amended Complaint that addresses the deficiencies of pleading as to his First Amendment retaliation claims against Defendants Montgomery, Rodriguez, Luccy, Ortega, Nava, Chavarria, and Paul only. Plaintiff's Second Amended Complaint must be complete by itself without reference to either of his previous pleadings, and must comply with S.D. CAL. CIVLR 8.2(a). Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file his Second Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failures to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and his failure to prosecute in compliance with court orders requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated: October 10, 2017

_____
Hon. Cathy Ann Bencivengo
United States District Judge