UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| COLUMBUS ALLEN, Jr., CDCR #AE-1543, | Case No.: 3:16-cv-01923-CAB-JMA |
|---|---|
| Plaintiff, vs. SCOTT KERNAN, et al., Defendants. | **ORDER DISMISSING SECOND AMENDED COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND § 1915A(b) AND FOR FAILING TO COMPLY WITH COURT ORDERS REGARDING AMENDMENT** |

**I.   Procedural History**

COLUMBUS ALLEN Jr. ("Plaintiff"), is proceeding pro se in this civil rights action, which he first initiated almost two years ago on July 28, 2016, and against more than a dozen correctional officials pursuant to 42 U.S.C. § 1983. Plaintiff's suit involves his refusal to submit to random urinalysis testing while he was incarcerated at Centinela State Prison on July 28, 2015, and the disciplinary proceedings and appeals that followed.

At the time he filed his Complaint, Plaintiff did not prepay the $400 filing fee mandated by 28 U.S.C. § 1914(a); instead, he filed a Motion to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

///

On November 3, 2016, the Court granted Plaintiff leave to proceed IFP, but dismissed his Complaint failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b) (ECF No. 3). The Court further granted Plaintiff 45 days in which to file an Amended Complaint that addressed the deficiencies of pleading identified by the Court. *Id.*; *see also Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured.") (citations omitted).

Plaintiff failed to amend, and instead filed a Motion for Reconsideration (ECF No. 5). On March 9, 2017, the Court denied Plaintiff's Motion, but sua sponte granted him an additional 30 days to file the Amended Complaint required as a result of the Court's November 3, 2016 Order (ECF No. 6). Plaintiff again failed to amend, and requested additional time in which to do so (ECF No. 8). The Court granted that request, and on June 19, 2017, Plaintiff filed his First Amended Complaint ("FAC") (ECF Nos. 9, 10.)

On October 10, 2017, the Court screened Plaintiff's FAC and again dismissed it sua sponte and in its entirety for failing to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) (ECF No. 12). While the Court denied further leave to amend as to Plaintiff's Fourth, Eighth, and Fourteenth Amendment pleading deficiencies as futile, it granted him leave to amend with respect to "the First Amendment retaliation claims raised for the first time in his FAC against Defendants Montgomery, Rodriguez, Luccy, Ortega, Nava, Chavarria, and Paul." (*Id.* at 19.)

Instead of timely complying with the Court's October 10, 2017 Order, Plaintiff chose to file a Notice of Appeal (ECF No. 13); but the Ninth Circuit dismissed it for lack of jurisdiction on November 14, 2017 (ECF No. 16). On November 27, 2017, Plaintiff again requested an extension of time in which to amend (ECF No. 18). On December 5, 2017, the Court once again granted Plaintiff's request (ECF No. 19), but explicitly cautioned that should Plaintiff's Second Amended Complaint ("SAC") "fail to cure the

pleading deficiencies … identified in the Court's October 10, 2017 Order," his entire case would be dismissed "without further leave to amend." (*Id.* at 6.)

On January 22, 2018, Plaintiff filed his SAC (ECF No. 21). While he was granted leave to amend his First Amendment retaliation claims as to Defendants Montgomery, Rodriguez, Luccy, Ortega, Nava, Chavarria, and Paul *only*, see ECF No. 12 at 19, and expressly warned not to "include any claims previously dismissed without leave to amend or add any new claims or Defendants," see ECF No. 19 at 5, Plaintiff's SAC nevertheless continues to include *all* the Defendants named in his prior pleadings, attempts to raise new claims, and re-asserts previously dismissed Fourth and Fourteenth Amendment claims—despite the Court's previous Order limiting the bases for amendment. (*Id.; see also* ECF No. 21 at 2, 26-30.)

## II. Failure to Comply with Court Orders

As a preliminary matter, and because the Court has twice dismissed all Plaintiff's Fourth, Eighth and Fourteenth Amendment claims as to Defendants Kernan, Voong, Briggs, Herick, Whitman, Hernandez, Valdez, Blackstone, Sanchez, Uribe, the CDCR, and Beard for failing to state a claim and without further leave to amend, it will not reconsider those allegations again despite Plaintiff's efforts to include them in his SAC.

Pursuant to Federal Rule of Civil Procedure 41(b), a district court may dismiss an action for failure to prosecute, failure to comply with the Federal Rules of Civil Procedure, failure to comply with the court's local rules*, or failure to comply with the court's orders*. *See Hells Canyon Preservation Council v. U.S. Forest Serv.,* 403 F.3d 683, 689 (9th Cir. 2005) (recognizing that courts may dismiss an action pursuant to Federal Rule of Civil Procedure 41(b) sua sponte for a plaintiff's failure to prosecute or comply with the rules of civil procedure or the court's orders) (emphasis added); *Ferdik v. Bonzelet,* 963 F.2d 1258, 1260 (9th Cir. 1992) ("Pursuant to Federal Rule of Civil Procedure 41(b), the district court may dismiss an action for failure to comply with any order of the court."); *Johnson v. KHS & S Contractor*, No. 2:11-CV-00109 GEB, 2011 WL 2470682, at *2 (E.D. Cal. June 20, 2011).

Plaintiff's SAC fails to comply with this Court's October 10, 2017 and December 5, 2017 Orders insofar as it includes allegations against Defendants previously dismissed without leave to amend. Therefore, all claims *other than* Plaintiff's retaliation claims as re-alleged against Defendants Montgomery, Rodriguez, Luccy, Ortega, Nava, Chavaria and Paul remain dismissed based on Plaintiff's previous repeated failures to state any Fourth, Eighth, or Fourteenth Amendment claim upon which § 1983 relief can be granted for the reasons explained at length in the Court's November 3, 2016, and October 10, 2017 Orders. *See* ECF Nos. 3, 12; *Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017) ("Under the law of the case doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'") (quoting *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993)); *Seto v. Thielen*, 519 Fed. Appx. 966, 969 (9th Cir. 2013) (upholding dismissal of complaint when "[p]laintiffs repeatedly failed to comply with the district court's orders directing them to remedy the drastic shortcomings of their pleadings" and they "were warned several times that failure to comply ... would result in automatic dismissal"); *see also Ferdik*, 963 F.2d at 1261-62 (upholding dismissal of pro se civil-rights action for failure to comply with court order requiring remedying deficient caption); *Jackson v. People Ready, Inc.*, No. EDCV170143 FMO JPR, 2017 WL 5176286, at *7 (C.D. Cal. Sept. 22, 2017), *report and recommendation adopted*, No. EDCV170143FMOJPR, 2017 WL 5158649 (C.D. Cal. Nov. 7, 2017).

### III. Screening of Remaining Retaliation Claims in Second Amended Complaint

As Plaintiff is now well aware due to the Court's November 3, 2016, March 9, 2017, and October 10, 2017 Orders, the Prison Litigation Reform Act ("PLRA") requires review of all complaints filed by persons proceeding IFP, as well as those filed by persons, like Plaintiff, who are "incarcerated or detained in any facility [and] accused of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary program," at the time of filing "as soon as practicable after docketing." *See* 28 U.S.C. §§ 1915(e)(2) and

1915A(b). Under the PLRA, the Court must sua sponte dismiss complaints, or any portions thereof, which are frivolous, malicious, fail to state a claim, or which seek damages from defendants who are immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Lopez*, 203 F.3d at 1126-27 (§ 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

### A. Standard of Review

"The purpose of § 1915[] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *accord Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").

Every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

While a plaintiff's factual allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Nor is the Court required to accept as true conclusory allegations in a pleading that contradict the exhibits attached. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998); *see also Nat'l Assoc. for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (courts "may consider facts contained in documents attached to the complaint" to determining whether the complaint states a claim for relief).

Moreover, while the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Even before *Iqbal*, "[v]ague and conclusory allegations of official participation in civil rights violations" were not "sufficient to withstand a motion to dismiss." *Id.*

### B. Plaintiff's Allegations

As noted above, and because Plaintiff has been granted leave to amend his First Amendment retaliation claims as to Defendants Montgomery, Rodriguez, Luccy, Ortega, Nava, Chavarria and Paul only, *see* ECF No. 12 at 19; ECF No. 19 at 5, the Court will first summarize Plaintiff's factual allegations as to those parties as pleaded in his FAC, and then review the amended allegations he makes as to these parties in his SAC in order to determine whether his SAC cures the pleading deficiencies noted in the Court's October 10, 2017 Order sufficient to state a plausible claim for relief.

1. <u>Retaliation Claims in FAC</u>

In his FAC, Plaintiff claimed Defendant Rodriguez "drafted an illicit RVR" (Rules Violation Report) regarding his refusal to submit to urinalysis testing on July 28, 2015, "in retaliation to [his] right to prevent restraint of liberty," and as "interference with the

6

3:16-cv-01923-CAB-JMA

exercise and protection of his rights and liberties." (ECF No. 10 at 6, 20.) Plaintiff further claimed Defendants Luccy and Ortega searched his cell and seized his property "in retaliation" for an October 8, 2015 "[re]quest for [a] proper response" regarding the "probable cause" for his urinalysis. (*Id.* at 12-13, 19-20.) In addition, Plaintiff claimed Defendants Nava, Chavarria, and Paul "imposed additional sanctions upon [him]" when they reviewed his CDCR 602 Inmate/Parolee Appeal Log No. CAL-C-15-01379 at the second level on October 14, 2015, "in retaliation" for his having filed it on September 8, 2015. (*Id.* at 20; *see also* Attach. 2, Ex. C, ECF No. 10 at 83-91.)

Plaintiff further claimed Defendant Chavarria "exceeded his authority" by "conducting a 2nd level review" of his CDCR 602 Inmate/Parolee Appeal, Log No. CAL-C-15-1679, filed on October 27, 2015, and challenging the "illicit confiscation of [his] personal property" by Ortega and Luccy, and by denying it on December 16, 2015, "in retaliation" for Plaintiff's decision to appeal from the first level. (*Id.* at 20; *see also* Attach. 3 at 100-109.) Finally, Plaintiff alleged he "believe[d]" Montgomery "directed and/or authorized the retaliatory acts of his subordinates," including the random drug testing he was required to undergo following his August 9, 2015 disciplinary conviction, ECF No. 10 at 12-17, in order to deter Plaintiff's "efforts to redress" the "unconstitutional practices" authorizing his urinalysis and property confiscation claims via CDCR 602 inmate grievance procedures. (*Id.* at 12, 21.)

2. <u>Retaliation Claims in SAC</u>

In his SAC, Plaintiff continues to allege Defendant Rodriguez "targeted" him with an "illicit U/A practice" on July 28, 2015, by demanding he submit to urinalysis and failing to disclose the probable cause supporting it. (ECF No. 21 at 10.) When Plaintiff told Rodriguez, "I'ma book you [file a grievance] for violating procedures, then I'ma whoop yo' pockets [sue for damages] if ya'll file another B.S. 115," Plaintiff claims Rodriguez "threatened to issue a RVR." (*Id.*) Plaintiff claims he immediately "submitted three CDCR 22's to the Drug Testing Coordinator" seeking to justify Rodriguez's "breach," "which initiated the grievance process." (*Id.*) Plaintiff further contends the

RVR signed by Rodriguez on July 30, 2015, Log No. 07-15-C-111, and charging him with refusing to provide a UA sample in violation of Cal. Code Regs., tit. 15 § 3290(d) on July 28, 2015, was "filed … for review three days after [he] initiated the grievance process," by submitting the CDCR 22s. (*Id.*, *see also* Attach. 2, Ex. B, ECF No. 21 at 92.)

Plaintiff claims his July 28, 2015 CDCR 22s were "apparently directed to Cpt. Chavarria," who provided "inadequate" responses, and returned them to Plaintiff on August 11, 2015, two days "<u>after</u> the 8-9-15 RVR hearing." (*Id.* at 12, Attach. 2, Ex. A at 79-82.)[1] Plaintiff was found guilty, and the hearing results were reviewed and signed by Chavarria, the C Facility Captain, on August 19, 2015. (ECF No. 21 at 12, Attach. 2, Ex. B at 92.)

On that same day, Plaintiff submitted another CDCR 22, attached to which was a "5-pg notice" alleging various procedural violations related to his July 28, 2015 refusal to submit to urinalysis and RVR Log No. 07-15-C-111. (*Id.*, Attach 2, Ex. A, at 83-88.) This CDCR 22 was marked "forwarded" to Warden Montgomery, *see id.,* but was returned to Plaintiff on August 25, 2015, by the Associate Warden (Whitman), who directed Plaintiff to instead include his documentation in a CDCR 602 appeal of his RVR findings "for proper processing." (*Id.*, Attach. 2, Ex. A at 89.)[2] Plaintiff "interpreted the response as a euphemistic veiled threat," because Whitman "had to have known the RVR designated for final approval by her had been intercepted by her subordinate, Cpt. Chavarria." (ECF No. 21 at 13.)

///

---

[1] Plaintiff's SAC alleges his July 28, 2015 CDCR 22s demanding justification for his urinalysis testing were reviewed by Chavarria and returned to him on August 11, 2015, *see* ECF No. 21 at 12; however copies of the CDCR 22s he has attached as exhibits are all signed by Chavarria and dated "returned" to Plaintiff on August 3, 2015, which was six days <u>before</u> his RVR hearing. (*Id.*, Attach. 2, Ex. A at 79-81; *see also* Attach. 2, Ex. B at 93.)

[2] All Plaintiff's Fourteenth Amendment allegations involving Defendant Whitman have been dismissed without further leave to amend. (ECF No. 12 at 6-13, 19.)

On September 8, 2015, Plaintiff filed CDCR Inmate/Parolee 602, Log No. CAL-C-15-01379, formally challenging his disciplinary conviction on due process grounds. (*Id.* at 13, Attach. 2, Ex. C at 99-101.) Plaintiff contends Defendant Nava "provid[ed] [the] Second Level Response" on October 14, 2015, and "intentionally exceeded his authority by relying on new information from Rodriguez" as the basis for denying his appeal. (*Id.* at 14.) Plaintiff's exhibit shows, however, that while Defendant Nava interviewed him at the Second Level of Review, it was Chief Deputy Warden Paul who rejected Plaintiff's due process claims, and Paul who ordered a modification of Plaintiff's disciplinary sentence in order to impose an additional 90-day loss of pay sanction, as required by Cal. Code Regs., tit. § 3315(f)(5)(J). (*Id.*, Attach. 2, Ex. C at 103-106.) Plaintiff contends Defendant Paul, "with permission" from Defendant Montgomery "exceeded his authority" by doing so, by "approv[ing] Nava's and Chavarria's acts and omissions." (*Id.* at 15.)

Plaintiff also re-alleges that in the interim, Correctional Officers Luccy and Ortega "conducted a planned search of [his] cell" on October 9, 2015, "as directed by Cpt. Chavarria," also "with permission from [Warden] Montgomery," and confiscated his personal property "under the false pretense that his name and CDC# [as] inscribed on the items, as required by Cal. Code Regs., tit. 15 § 3191(b)" "looked unauthentic." (ECF No. 21 at 16, Attach. 3 at 114.) Plaintiff again "initiated the grievance process by submitting a CDCR 22" requesting the return of his property and/or compensation for its loss, but "to no avail," so he formally filed CDCR 602 Inmate/Appeal Log No. CAL-C-15-01679 asking for "the same relief" on October 27, 2015. (*Id.* at 17; *see also* Attach. 3 at 120-123.) Plaintiff contends Defendant Chavarria "approved" the dismissal of this appeal at the First Level of Review, *see id.* at 17, and by doing so "exceeded his authority … as reprisal against Plaintiff," again "with permission from [Warden] Montgomery." (*Id.* at

///
///
///

18; *see also* Attach. 3 at 121, 124-125.)[3]

Plaintiff concludes, for the first time in his SAC, that as a result of a "collusion" involving Defendants Montgomery, Paul, Chavarria, Nava, Rodriguez, Ortega, and Luccy, his "right to petition for redress was intentionally violated," and "not to ensure public safety, or institutional security, but because [he] is Black and/or to harass him." (*Id.* at 27.) Plaintiff "believes" this occurred because he was "bombarded by Black inmates" with requests to help them defend RVRs issued for refusing urinalysis at CSP-CAL between 2013-2014, "CSP-CAL agents discovered [he] was helping inmates challenge their convictions," and therefore began to also "target [him] with the illicit U/A practice." (*Id.* at 8-10.)

**C.  Analysis**

1.  <u>Retaliation Claims</u>

As this Court noted on October 10, 2017, prison officials may not retaliate against an inmate for engaging in protected conduct, *e.g.,* initiating litigation or filing administrative grievances. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005). However, to state a viable claim of retaliation, Plaintiff must to plead facts sufficient to show that "(1) ... a state actor took some adverse action against [him] (2) because of (3) [his] protected conduct, and that such action (4) chilled [his] exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68; *Entler v. Gregoire*, 872 F.3d 1031, 1040 (9th Cir. 2017). As currently pleaded, Plaintiff's SAC fails to satisfy these essential pleading requirements for many of the same reasons his FAC failed to do so.

First, Plaintiff's allegations against Warden Montgomery, *e.g.*, that he "permitted," "authorized," or "approved" of various acts of wrongdoing allegedly committed by his

---

[3] None of Plaintiff's exhibits regarding CDCR 602 Inmate/Parolee Appeal Log No. CAL-C-15-01679 include any reference to or document any personal participation by Warden Montgomery at either the First, Second, or Third Levels of Review. (ECF No. 21, Attach. 3 at 120-129.)

10

subordinates, *see* ECF No. 21 at 12, 15,16, 18, still fail to state any plausible claim upon which relief can be granted. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). "A supervisor's mere awareness of the discriminatory effects of his or her actions or inaction does not state a claim of unconstitutional discrimination." *Starr v. Baca*, 652 F.3d 1202, 1206 (9th Cir. 2011).

Second, while Plaintiff's SAC recounts the same factual scenario involving his initial refusal to comply with Defendant Rodriguez's order to submit to random urinalysis testing on July 28, 2015, the RVR and disciplinary proceedings that followed, and his repeated efforts to challenge the basis for both his testing, disciplinary conviction, and the seizure of his personal property via the CDCR 602 inmate appeals process, it also continues to rely on "conclusory statements" to make the "legal conclusion[]," *see Iqbal*, 556 U.S. at 678, that *all* Defendants—including those previously dismissed based on his failures to state claims against them—"colluded" "in violation of [his] privilege against retaliation, and rights to petition for redress and equal protection and benefit of state laws, guaranteed by the 1st and 14th Amendments to the U.S. Constitution." (ECF No. 21 at 26).

"Bare assertions" of conspiracy, however, based only on Plaintiff's "belief" that Defendants were "colluding" against him, and without further "factual content" supporting each element of a retaliation claim as applied to Defendants Montgomery, Rodriguez, Luccy, Ortega, Nava, Chavarria, and Paul, however, do not "allow[] the court to draw the reasonable inference that [each] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678-79; *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient."); *see also Cejas v. Paramo*, No. 3:14-CV-1923-WQH-WVG, 2017 WL 3822013, at *2 (S.D. Cal. Sept. 1, 2017); *Wilson v. Fox*, No. 216CV0219JAMACP, 2017 WL 5526540, at *3 (E.D. Cal. Nov. 17, 2017) (sua sponte dismissing conclusory

allegations of discrimination based on race for failing to state a claim pursuant to 28 U.S.C. § 1915 and *Iqbal*, where "no facts … [were alleged to] demonstrate a race-based, discriminatory motive behind defendants' actions."); *Williams v. Botich*, No. CV 05-02877 TJH (AN), 2010 WL 11534578, at *8 (C.D. Cal. Sept. 3, 2010) ("Here, like in *Iqbal*, Williams's discrimination sub-claim is built upon threadbare, conclusory recitals that fail to allege and show any of the six named defendants undertook the alleged discriminatory action because of and not merely in spite of Williams's race."), *report and recommendation adopted*, No. CV 05-2877 TJH (AN), 2010 WL 11537529 (C.D. Cal. Sept. 24, 2010), *aff'd*, 459 F. App'x 620 (9th Cir. 2011).

Third, to the extent Plaintiff's SAC continues to ground his retaliation claims against Defendants Nava, Chavarria, and Paul based on their processing, review, rejection, and/or denials of his CDCR 22s, CDCR 602 Inmate/Parolee Appeal Log No. CAL-C-15-01379 (challenging the validity of CDCR 115 RVR Log No. 07-15-C-111), or CDCR 602 Inmate/Parolee Appeal Log No. CAL-C-15-01679 (challenging Defendant Ortega and Lucy's October 9, 2015 cell search and property confiscation), *see* ECF No. 21 at 12-15, 17, he also fails to state a claim. *See Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (plaintiff bears the burden of pleading the "absence of legitimate correctional goals" for the conduct about which he complains); *Richey v. Dahne*, __ Fed. App'x __, 2018 WL 1940242, at *2 (9th Cir. Apr. 25, 2018) ("Neither [Ninth Circuit] case law nor that of the Supreme Court has clearly established that merely refusing to accept a grievance for processing is a retaliatory adverse action."); *see also Burgos v. Canino*, 641 F. Supp. 2d 443, 455 (E.D. Pa. 2009) ("The mere denial of grievances does not rise to the level of adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights."); *Dicey v. Hanks*, No. 2:14-cv-2018 JAM AC P, 2015 WL 4879627, at *5 (E.D. Cal. Aug. 14, 2015) (collecting cases) ("[D]enial of a grievance neither constitutes an adverse action that is more than de minimis nor is it sufficient to deter a prisoner of "ordinary firmness" from further First Amendment activities."); *accord Wong v. Ponce*, No. 2:16-CV-00501 AC P, 2017 WL 784913, at *6 (E.D. Cal.

Mar. 1, 2017); *Morris v. Green*, No. 2:13-CV-0589 JAM CKD P, 2016 WL 4044930, at *4 (E.D. Cal. July 28, 2016); *Payan v. Tate*, No. 1:13-CV-00807 LJO BAM PC, 2017 WL 880422, at *3 (E.D. Cal. Mar. 6, 2017) ("Plaintiff cannot state a claim for retaliation because defendants partially granted and/or denied his prison grievances."), *report and recommendation adopted*, No. 1:13-CV-00807 LJO BAM PC, 2017 WL 1214015 (E.D. Cal. Mar. 31, 2017).

Finally, even assuming Plaintiff's RVR, the disciplinary punishments he faced as a result of refusing to comply with Rodriguez's July 28, 2015 order to submit to random urinalysis, and his October 9, 2015 cell search and property confiscation were "adverse actions" sufficient to chill "a person of ordinary firmness," *see Rhodes*, 408 F.3d at 567; *see also Brodheim v. Cry*, 584 F.3d 1262, 1269-70 (9th Cir. 2009), his SAC nevertheless fails to further allege facts to show either the necessary "causal connection between the adverse action[s] and [his] protected conduct," *Watison*, 668 F.3d at 1114; *Brodheim*, 584 F.3d at 1271 (citing *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (plaintiff must allege his protected conduct was "the 'substantial' or 'motivating' factor behind the defendant's conduct.")), *or* that any Defendant's action lacked a legitimate correctional goal. *Pratt*, 65 F.3d at 806 (plaintiffs alleging retaliation bear the burden of pleading the "absence of legitimate correctional goals" for the conduct about which they complain).

Specifically, Plaintiff contends unidentified "CSP-CAL agents discovered [he] was helping [other] inmates" challenge their U/A RVRs sometime "in 2015" when "no documents were disclosed with the RVR to infer cause justifying a U/A request," *see* ECF No. 21 at 8-9, and that as a result he was "targeted with the [same] illicit U/A practice," on July 28, 2015.[4] *Id.* at 10. While he does contend to have told Defendant

---

[4] Plaintiff's previous attempts to challenge the validity of his compelled urinalysis pursuant to Cal. Code Regs., tit. 15 § 3290 without a showing of "probable cause," as alleged in both in his original and First Amended Complaints have already been dismissed on First, Fourth, Eighth, and Fourteenth Amendment grounds without leave to amend. *See* ECF Nos. 3, 12.

13

Rodriguez that he would "book [him] [file a grievance] for violating procedures," and would "whoop [his] pockets [sue for damages] if [he] file[d] another B.S. 115," in response to Rodriguez's order that he submit a urine sample on July 28, 2015, and to have "immediately" submitted three CDCR 22s in objection to Rodriguez's order, *id.* at 10, he fails to further allege that Rodriguez knew or had any reason to know he had personally filed any grievances or lawsuits, or had been assisting other inmates to mount administrative or legal challenges to their U/A RVRs *prior to* July 28, 2015. *See Quiroz v. Horel*, 85 F. Supp. 3d 1115, 1130 (N.D. Cal. 2015) (finding no evidence to support claim of retaliation where Defendants were not shown to have been aware of plaintiff's grievance-filing or litigation, nor had expressed any opposition to it).

Thus, while Plaintiff alleges he had engaged in a "constitutionally protected right to file grievances," *Entler*, 872 F.3d at 1041-42, his SAC fails to allege any plausible facts to suggest the RVR Log No. 07-15-C-111 issued by Rodriguez on July 28, 2015, Defendant Luccy and Ortega's October 9, 2015 confiscation of his personal property, or the subsequent processing, review, or denials of either of CDCR 602 Appeal Log No. CAL-C-15-01379 or Log No. CAL-C-15-01679 by Defendants Nava, Chavarria, and Paul (the "adverse actions" at issue here), were caused or substantially motivated by his protected conduct, or failed to advanced a legitimate penological goal. *Brodheim*, 584 F.3d at 1271-72; *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).

"[M]ere allegations that Plaintiff engaged in protected activity," like those advanced by Plaintiff here, "without knowledge resulting in animus by a Defendant, [are] insufficient to show that [his] protected activity was the motivating factor behind [] Defendant[]s['] actions." *Manago v. Gonzalez*, No. 1:11-CV-01269-SMS PC, 2012 WL 6628902, at *6 (E.D. Cal. Dec. 19, 2012) (citations omitted). In sum, "the general fact that Plaintiff has filed inmate grievances regarding prison official misconduct does not suddenly convert all adverse actions taken against Plaintiff into retaliatory acts." *Pierce v. Gonzales,* No. 1:10-CV-00285 JLT, 2012 WL 6019579, at *6 (E.D. Cal. Dec. 3, 2012).

For all these reasons, the Court finds Plaintiff's SAC fails to state a discrimination or retaliation claim upon which relief may be granted and that it, like Plaintiff's original and First Amended Complaints, must also be dismissed sua sponte pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b)(1). *See Lopez,* 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

### 2. State Law Claims

To the extent Plaintiff's SAC also continues to invoke Article I of the California Constitution, and Cal. Code Civil Code § 52.1 as additional bases for his retaliation claims, *see* ECF No. 26-27, the Court again exercises its discretion pursuant to 28 U.S.C. § 1367(c)(3) to dismiss those supplemental claims without prejudice due to the absence of any viable federal claim. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726 (1966); *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997).

### 3. Leave to Amend

Because Plaintiff has been provided a short and plain statement of all his First, Fourth, Eighth, and Fourteenth Amendment pleading deficiencies, given the opportunity to amend each potential basis for relief to no avail, and has been cautioned that his failure to cure those deficiencies would result in the dismissal of his entire case, *see* ECF Nos. 19 at 6, the Court denies further leave to amend as futile. *See Gonzalez v. Planned Parenthood,* 759, F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of ... leave to amend.'") (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad." (internal quotation marks omitted) (second alteration in original)).

///
///
///

15

3:16-cv-01923-CAB-JMA

## IV. Conclusion and Order

Accordingly, the Court:

1. **DISMISSES** Plaintiff's Second Amended Complaint (ECF No. 21), and this civil action in its entirety, based on his failure to comply with the Court's Orders permitting amendment and his failures to plead any plausible constitutional claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii) and § 1915A(b)(1);

2. **CERTIFIES** that an IFP appeal would *not* be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3); and

3. **DIRECTS** the Clerk of Court to enter a judgment of dismissal and to close the file.

**IT IS SO ORDERED**.

Dated: April 30, 2018

_____
Hon. Cathy Ann Bencivengo
United States District Judge